# EXHIBIT A

1 │ Michael Zelman (SBN 297682)
  │ mzelman@scllgpc.com
2 │ Taylor M. Prainito (SBN 286965)
  │ tprainito@scllgpc.com
3 │ **SOUTHERN CALIFORNIA LABOR LAW GROUP, PC**
  │ 1875 Century Park East, Suite 480
4 │ Los Angeles, CA 90067
  │ Telephone: (424) 231-2366
5 │ Facsimile:  (323) 319-5148

6

7 │ Attorneys for Plaintiff,
  │ RENEE MILLER

8

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

OCT 26 2021

BY _____
DAISY BAILON, DEPUTY

9 │ **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10 │ **FOR THE COUNTY OF SAN BERNARDINO**

11

12 │ RENEE MILLER,

13

14 │ vs.

15 │ HILTI, INC., an Oklahoma Corporation;
   │ HILTI US MANUFACTURING, INC.,
16 │ a California Corporation; MARTIN
   │ RUF, an Individual; DIARRA POLK,
17 │ an Individual and DOES 1-100,
   │ inclusive,
18
   │ Defendants.
19

20

21

22

23

24

25

26

27

28

Case No.:  **CIV SB  2 1 3 0 8 0 1**

**PLAINTIFF RENEE MILLER'S COMPLAINT FOR DAMAGES FOR:**

**(1) DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**

**(2) HARASSMENT ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**

**(3) DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF FEHA;**

**(4) HARASSMENT ON THE BASIS OF DISABILITY IN VIOLATION OF FEHA;**

**(5) FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF FEHA;**

**(6) FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS;**

**(7) RETALIATION FOR ENGAGING IN A PROTECTED ACTIVITY IN VIOLATION OF FEHA;**

**(8) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION**

─────────────────────────────────────────

PLAINTIFF'S COMPLAINT FOR DAMAGES

)       OF FEHA;

)   **(9) WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF PUBLIC POLICY;**

)   **(10) VIOLATION OF LABOR CODE § 1102.5;**

)   **(11) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

)   **DEMAND FOR JURY TRIAL**

Plaintiff, RENEE MILLER, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by RENEE MILLER, ("plaintiff" or "MILLER"), whose employment with defendants HILTI, INC., an Oklahoma Corporation; HILTI US MANUFACTURING, INC., a California Corporation; MARTIN RUF, an Individual; DIARRA POLK, an Individual, was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

# PARTIES

1. *Plaintiff:*  Plaintiff RENEE MILLER is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:*

   a. Defendant Hilti, Inc., is an Oklahoma Corporation, that is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in California.

   b. Defendant Hilti US Manufacturing, Inc., is a California  Corporation, that is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in California.

   c. Defendant Hilti, Inc., Hilti US Manufacturing, Inc., is a Delaware Corporation, that is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in California.

   d. Defendant Martin Ruf, is believed to be, and at all times mentioned in this complaint to have been, a resident of the County of San Bernardino, California.

   e. Defendant Diarra Polk is believed to be, and at all times mentioned in this complaint to have been, a resident of the County of San Bernardino, California.

   f. Defendants Does 1 through 100 are sued under fictitious names pursuant to Code of Civil Procedure section 474.  Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of her or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants.

2. Hilti, Inc., Hilti US Manufacturing, Inc., Martin Ruf, Diarra Polk, and Doe defendants 1 to 100 may be collectively referred to as "defendants."

///

3.   *Relationship of defendants:*

a.   All defendants and all Doe defendants directly and/or indirectly employed plaintiff, as defined under the regulations, statutes, and interpreting case law, including California Government Code section 12926(d).

b.   All defendants and all Doe defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged throughout, which is prohibited under California Government Code section 12940(i).

c.   All defendants and all Doe defendants were acting as the agents of all other defendants and employers, as defined under the regulations, statutes, and interpreting case law, including California Government Code section 12926(d).

d.   All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, on behalf of all defendants, and engaged in, authorized, ratified, and approved of the conduct of all other defendants.

e.   Plaintiff is informed and believes, and on that basis alleges, that, at all times relevant hereto, all defendants, and each of them, were the principals, agents, servants, employers, employees, partners, joint venturers, predecessors in interest, successors in interest, and/or authorized representatives of each of the other defendants, were at all times relevant herein acting within the purpose, course and scope of their agency, service, employment, partnership, joint venture, and/or representation, and were doing so with the knowledge, permission, and consent of their principals, employers, partners, joint venturers, and co-defendants, and each of them. Plaintiff further alleges that each and every defendant was negligent, careless, and legally liable in the selection and hiring of each and every other defendant as its agent, servant, employee, consultant, assistant, representative, partner, and/or joint venturer.

f.   All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i).  All defendants were responsible for the events and damages alleged herein, including on the following bases:  (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or

-4-

PLAINTIFF'S COMPLAINT FOR DAMAGES

acted under the control or supervision of, one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

g. Defendants directly and indirectly employed plaintiff MILLER, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

h. In addition, defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

4. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## VENUE

5. Some of the actions at issue in this case occurred in the State of California, in the County of San Bernardino. Under the California Fair Employment and Housing Act, this case can alternatively, at plaintiff's choice, be filed:

> [I]n any county in the state in which the unlawful practice is alleged to have been committed, in the county in which the records relevant to the practice are maintained . . . or in the county in which the aggrieved person would have worked . . .

California Government Code § 12965(b) (emphasis added).

6. Plaintiff worked in California, and at times, conducted certain job duties in the County

of San Bernardino.

## FACTS COMMON TO ALL CAUSES OF ACTION

7.  *Plaintiff's protected status and activity:*

    a.  Plaintiff is a female.

    b.  Plaintiff suffered from a disability and/or medical condition.

    c.  Plaintiff made good faith complaints about the discrimination and harassment she experienced while employed by defendants to defendants' human resources department and to her supervisors and/or managers.

8.  Renee Miller, a Hispanic female, began working as a full-time Account Manager for Defendants on August 30, 2014. Upon her hiring, Miller worked under the supervision of Nick Demonico ("Demonico") on the Industrial Team, where she proved to be an outstanding employee. Miller excelled in her position; she was reliable, diligent and conscientious. She never received a disciplinary or performance write-up. Throughout Miller's tenure, she and Demonico had an amicable relationship, and Miller felt the support of her supervisor. Demonico repeatedly provided Miller with high marks and positive feedback about her work ethic. In or around 2017, Martin Ruf took over the Industrial Team and became Miller's new supervisor. Demonico was transferred to Building and Construction. Prior to the change in management, Demonico informed Ruf that Miller was next in line for a promotion and eligible to begin ELP schooling, a course requirement for the Project Manager position Miller sought.

9.  In his first interaction with Miller, Ruf expressed to Miller that his expectations were high. As the only female on the Industrial Team, Miller was prepared for and welcomed the challenge, though she was apprehensive due to the general dynamic projected at Defendants. Females at Defendant saw the company as a sort of "boys club" where females were rarely, if ever, promoted to management. Miller was aware of only one female employee that had achieved a management position and she had been with the company for over 15 years. Nevertheless, Miller was optimistic and hoped to learn from Ruf, thus she expressed to Ruf that she was extremely motivated to grow into a Project Manager.

10. In 2017, Martin began forcing Miller to do regular ride-alongs (Van Rides) at which time Martin berated Miller's performance. Though she was a top performer, Martin insisted on the ride-alongs with Miller much more frequently than employees who were struggling to meet their performance goals. Miller believed she was being targeted due to her gender since her performance exemplary. Additionally, Martin made gender biased comments to her, stating that she was "too emotional" and that her "emotions hindered her ability to perform". Miller was offended as her passion for the job and actually caring was the secret to her performing so well and maintaining lasting relationships with her clients. Nevertheless, Martin embraced every opportunity to get Miller one on one and critique her.

11. The months of discriminatory and harassing conduct created great stress for Miller, leading to a devastating bout with shingles. Her medical condition required Miller to request a short leave of absence, during which Miller was forced to postpone a scheduled meeting with her assigned mentor, LaDena Schultz. Miller provided immediate notice to Schultz prior to the meeting. When Ruf discovered that Miller missed the meeting due to a medical need, he and Schultz retaliated, terminating the mentorship. Ruf also removed her from the committee, resulting in Miller losing her eligibility for promotion or ELP schooling. The remaining committee consisted entirely of males.

12. In addition to creating a hostile work environment for Miller, Ruf also reassigned Miller's good standing accounts to male sales staff with no explanation. Though Miller had no recourse against Ruf's discriminatory, harassing and retaliatory acts towards her, many of her accounts complained and demanded to be reassigned to Miller. Not only did Ruf's reassignment of accounts act indirectly as theft of Miller's commissions, but it also created the opportunity for Ruf to assign Miller the most difficult and demanding clients. It was clear to Miller that Ruf intentionally placed more burden on her while males benefitted financially and in a lighter work load, handling lower maintenance accounts Miller had curated. Additionally, Ruf gave Miller a heavier load than her coworkers received in number of accounts, all the while berating her for her work. Miller was also required to report to Ruf every week, while the male team members were not required to do so. Ruf increased Miller's forecast for DDAT more than anyone else,

creating the contradictory position that (1) he had higher expectations for her than anyone and yet (2) he was the most critical of her performance.

13. While Miller had approximately $1 million in sales, Ruf was grooming a male employee for the promotion Miller had been first in line for despite his paltry sales numbers of $45,000. Though Miller was meeting her goals every month, Ruf still attacked Miller, admonishing her for "not selling to my standards".

14. In or around January 2017, Miller complained to Christine Clauson ("Clauson") in Human Resources regarding Ruf's discriminatory and harassing treatment. Miller was aware of two other female employees, Amber and Haley, had complained about Ruf's discriminatory treatment. Amber transferred to another department and Haley resigned rather than face Ruf's harassment. Rather than investigate Miller's complaint or take corrective action, Clauson shockingly "blamed the victim", instructing her to read the book "The Art of Not Giving a Fuck" by Mark Manson. Miller felt helpless learning that HR's response was that she learn to live with the harassment and hostile work environment.  She requested and applied for a new position outside of Ruf's supervision but she was denied.

15. On or around June 17, 2017, due to Ruf's discriminatory, retaliatory and harassing conduct, Miller required a medical leave of absence to receive psychiatric treatment at Riverside Psychiatric. When Miller returned from her leave, Miller noticed Ruf's immediate refusal to communicate with her, instead creating an even more hostile and retaliatory environment. Miller felt afraid and unwelcome as she tried to carry out her duties. Ruf applied more rules and instructions, forcing her to communicate with him more than any other colleague.

16. In or around in 2018, Miller complained again to Diarra Polk ("Polk") in Human Resources about the continuous harassment and the ongoing hostility from Ruf. Once Miller mentioned Ruf's name, Polk immediately interrupted her and said, "…if this is another complaint about Martin, I don't want to hear it…other women have already complained about him…" Hearing Polk say this made Miller feel helpless and desperate with no options.

17. Despite all the obstacles created by Ruf, Miller continued to excel in sales in comparison to most of her colleagues. In or around December 2018, Miller was notified she

would be receiving an award for her performance and would be rewarded with a trip to Hawaii with some of her higher performing colleagues. Shortly thereafter, during a family vacation over Christmas, Miller received a call from Ruf stating that he had evaluated her work and was revoking the award the company had given to her to award another employee. Miller felt attacked to be accused of providing unsatisfactory work and she jumped into action even on her family vacation to deal with his accusations. Miller immediately felt stress anxiety and frustration due to Ruf's efforts to sabotage her career, all in a year in which her sales were $1million or more.

18.   Nevertheless, Ruf was aware of her excitement regarding Hawaii so he successfully sabotaged Miller's trip by forcing her to go to Cozumel instead, denying her the opportunity to celebrate with the team members she worked with day to day. Miller was devastated.

19.   Prior to the trip, every team leader recognized their top sellers in a ceremony with the whole company. In a clear display of discriminatory animus and retaliation, Ruf refused to acknowledge Miller for her work even as she was given the Masters Club award for being top sales associate.

20.   In early 2019, due to the stress caused by Ruf, Miller experienced a flareup of fibromyalgia that caused Miller to experience migraines, body pains, fatigue and anxiety. Miller was afraid to disclose this information to Defendants as she was previously reprimanded for her absence due to shingles. Miller felt that the only way to cope with her fibromyalgia and avoid any scrutiny from Defendants, especially Ruf, was to seek counseling.

21.   On or around March 15, 2019, Miller suffered from a back injury after unloading several boxes of stainless steel anchors for a client. Miller did not receive any worker's compensation treatment until March 25, 2019. On March 27, 2019 Miller was placed on medical leave of absence to recover from her work related injury. During her leave, Miller was harassed and pressured by Polk and Ruf via email and text message to return to her job. They constantly asked her about her about her return, even though they were aware of the severity of her injury, as Miller had emailed her work status reports. Though Miller was concerned about the hostile work environment, she returned to work on or about July 12, 2019. Miller requested accommodations in the form of less driving during shifts, working from home once a week, and

-9-

refraining from using demo tools that could aggravate her injuries. Defendants refused to accommodate her.

22.   In November 2019, Miller returned to complain to Polk again regarding Ruf's hostility towards her. Polk then suggested Ruf and Miller begin counseling together, where she encouraged both of them to participate in a zoom conference. Miller was very uncomfortable and explained to Polk that confrontation with Ruf made her anxious. Polk knew of Miller's anxiety, stating "its ok I'll be right there with you." Polk even forced to her to fill out a "Personal declaration worksheet", which required Miller to provide personal family information about her children to Ruf, who had been harassing her for years.

23.   As a result of debilitating migraine headaches caused Ruf's harassing conduct, Miller's doctor suggested she take another leave of absence in late 2019 to allow her to recuperate. Miller was on a medical leave of absence until May 16, 2020 when she received a phone call from Polk, at which time Defendants informed her that they would no longer accommodate her medical leave of absence and terminated her employment.

24.   Rather than accommodate Miller, Defendants discriminated against her due to her medical condition, gender, request for accommodations and complaints of gender discrimination by callously terminating her employment. Miller was devastated after years of dedication to the company. As a result, Miller continues to suffer from anxiety and depression. She has been unable to obtain similar employment.

25.   Defendants' stated reason for terminating was false and mere pretext as defendants' real reason for terminating MILLER's employment was for wrongful, illegal, discriminatory and/or retaliatory purposes related to her medical condition/disability, age, requests for accommodation and her good faith complaints regarding discrimination, harassment, retaliation, and/or other conduct that MILLER reasonably believed to be illegal.

26.   Following the termination, MILLER suffered severe symptoms of emotional distress including, but not limited to depression, anxiety, stress, headaches, and weight loss.

27.   *Economic damages:*  As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, stock

options, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

28.   *Non-economic damages:*   As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

29.   *Punitive damages:*   Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a.   *Malice:*   Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of her age, disability, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, and wrongful employment termination.

b.   *Oppression:*   In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of her age, disability, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, and wrongful employment termination.

c.   *Fraud:*   In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive her of legal rights.

30.   *Attorneys' fees:*   Plaintiff has incurred and continues to incur legal expenses and

attorneys' fees.

31.   *Exhaustion of administrative remedies:*  Prior to filing this action, plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-sue letter.

## FIRST CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12900, *et seq.*)

### (Sex/Gender Discrimination)—Against Defendants Hilti, Inc.,

### Hilti US Manufacturing, Inc., and Does 1 to 100, Inclusive)

32.   The allegations set forth in paragraphs 1 through 3 are re-alleged and incorporated herein by reference.

33.   At all times herein mentioned, FEHA, Government Code section 12940, *et seq.,* was in full force and effect and was binding on defendants.  This statute requires defendant to refrain from discriminating against any employee due to their sex/gender.  Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

34.   During plaintiff's employment with defendants, defendants had a pattern and practice of discriminating against female employees. During plaintiff's employment with defendants, defendants, through their supervisors, engaged in actions that had a negative impact on the treatment of female employees.  Specifically, defendants discharged female employees with greater frequency than male employees, hired fewer female employees, demoted female employees who complained about the actions of male employees such as sexual harassment, and gave better jobs and benefits to male employees.

35.   Plaintiff was a qualified employee at the time of the termination of her employment. Defendants continued to hire employees to replace female employees whom they were discharging or otherwise forcing out of the company. All of defendants' conduct raises an inference of discrimination.

36.   Defendants, through their managers and supervisors, made a number of comments to

and about plaintiff and made staffing decisions and/or transfers that exhibited sexist motivations, intentions, and consciousness.  Plaintiff believes and, on that basis, alleges that defendants' real motivation was to discharge her because of her gender.

37.   Defendants' conduct, as alleged, violated FEHA, and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's gender and/or other protected characteristics, in violation of Government Code section 12940(a);

b.   Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's gender and/or other protected characteristics, in violation of Government Code section 12940(j);

c.   Failing to take all reasonable steps to prevent discrimination and harassment based on gender and/or other protected characteristics, in violation of Government Code section 12940(k);

d.   Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, in violation of Government Code section 12940(h).

38.   On the basis of the above, plaintiff believes and alleges that her gender was a substantial motivating factor in defendants' termination of her employment.

39.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

40.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

41.   Defendants' discrimination was done intentionally, in a malicious, fraudulent, oppressive manner, entitling plaintiff to punitive damages.

Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.  Pursuant to

Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## SECOND CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12900, *et seq.*) (Gender Harassment)—Against All Defendants and Does 1 to 100, Inclusive)

42.   The allegations set forth in paragraphs 1 through 41 are re-alleged and incorporated herein by reference.

43.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

   a.   Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's gender and/or other protected characteristics, in violation of Government Code section 12940(j);

   b.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on gender, in violation of Government Code section 12940(k).

44.   As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

45.   As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

46.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

47.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, oppressive manner, entitling plaintiff to punitive damages against defendants.

### THIRD CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12900, *et seq.*)

### (Disability Discrimination)—Against Defendants Hilti, Inc., Hilti

### US Manufacturing, Inc. and Does 1 to 100, Inclusive)

48.   The allegations set forth in paragraphs 1 through 47 are re-alleged and incorporated herein by reference.

49.   Plaintiff's actual, perceived, and/or history of disability and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, to refuse to accommodate plaintiff, to refuse to engage in the interactive process, and/or to take other adverse job actions against plaintiff.

50.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's actual, perceived, and/or history of disability and/or other protected characteristics, in violation of Government Code section 12940(a);

b.   Failing to accommodate plaintiff's actual, perceived, and/or history of disability, in violation of Government Code section 12940(m);

c.   Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n);

d.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of disability, in violation of Government Code section 12940(k);

e.   Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of

discrimination, in violation of Government Code section 12940(h);

f.   Failing to provide plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against plaintiff for taking leave, in violation of Government Code section 12945.2.

51.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

52.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

53.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

54.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, and fraudulent manner, entitling plaintiff to punitive damages against defendants.

## FOURTH CAUSE OF ACTION

**(Violation of FEHA (Government Code § 12900, *et seq.*)**

**(Medical Condition and/or Disability Harassment—Hilti, Inc.,**

**Hilti US Manufacturing, Inc., Martin Ruf and Diarra Polk, and**

**Does 1 to 100, Inclusive)**

55.   The allegations set forth in paragraphs 1 through 54 are re-alleged and incorporated herein by reference.

56.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's actual, perceived, and/or history of disability and/or other protected characteristics, in violation of Government Code section 12940(j);

b.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of medical condition and/or physical disability, in violation of Government Code section 12940(k).

57.   As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

58.   As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

59.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

60.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, oppressive manner, entitling plaintiff to punitive damages against defendants.

**FIFTH CAUSE OF ACTION**

**(Violation of FEHA (Government Code § 12940(a), (i),**

**(m), (n)) (Failure to Provide Reasonable**

**Accommodation)—Against Defendants Hilti, Inc., Hilti**

**US Manufacturing, Inc. and Does 1 to 100, Inclusive)**

61.   The allegations set forth in paragraphs 1 through 61 are re-alleged and incorporated herein by reference.

62.   At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on defendants.  This statute requires defendants to provide reasonable accommodations to known disabled employees.  Within the time provided

by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

63.   Defendants wholly failed to attempt any reasonable accommodation of plaintiff's known disability.  Defendants used plaintiff's disability and her need to take medical leave as an excuse for terminating plaintiff's employment.

64.   Plaintiff believes and, on that basis, alleges that her disability and the need to accommodate her disability were substantial motivating factors in defendants' termination of her employment.

65.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

66.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

67.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

68.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, and fraudulent manner, entitling plaintiff to punitive damages against defendants.

**SIXTH CAUSE OF ACTION**

**(Violation of FEHA (Government Code § 12900, *et seq.*) (Failure**

**to Engage in Interactive Process)—Against Defendants Hilti,**

**Inc., Hilti US Manufacturing, Inc. and Does 1 to 100, Inclusive)**

69.   The allegations set forth in paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

70.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900,

*et seq.,* and defendants committed unlawful employment practices, including by the following bases for liability:  failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n).

71.  As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

72.  As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

73.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

74.  Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, and fraudulent manner, entitling plaintiff to punitive damages against defendants.

### SEVENTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12900, *et seq.*)

### (Retaliation for Engaging in a Protected Activity)—Against

### Defendants Hilti, Inc., Hilti US Manufacturing, Inc. and Does 1

### to 100, Inclusive)

75.  The allegations set forth in paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

76.  Plaintiff's engagement in protected activity, including good faith complaints and/or opposition to discrimination and harassment based on age, disability, and/or good faith complaints protected by FEHA, Government Code section 12900, *et seq.,* as well as to defendants' failure to accommodate her disability and failure to engage in the interactive process,

were motivating factors in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, and/or to take other adverse job actions against plaintiff.

77. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a. Demoting, discharging, barring, refusing to retain, refusing to transfer, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's age, disability, good faith complaints and/or other protected characteristics by FEHA, Government Code section 12900, *et seq.,* in violation of Government Code section 12940(a);

b. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's age, disability, good faith complaints and/or other protected characteristics, in violation of Government Code section 12940(j);

c. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on age, disability, and/or good faith complaints in violation of Government Code section 12940(k);

d. Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination, in violation of Government Code section 12940(h);

e. Failing to accommodate plaintiff's actual, perceived, and/or history of disability, in violation of Government Code section 12940(m);

f. Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n);

g. Creating a hostile work environment, in whole or in part on the basis of plaintiff's actual, perceived, and/or history of disability and/or other protected characteristics, in violation of Government Code section 12940(j);

h.   Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination, in violation of Government Code section 12940(h);

i.   Failing to provide plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against plaintiff for taking leave, in violation of Government Code section 12945.2.

78.   As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

79.   As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

80.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

81.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, oppressive manner, entitling plaintiff to punitive damages against defendants.


**EIGHTH CAUSE OF ACTION**

**(Failure to Prevent Discrimination, Harassment, and**

**Retaliation in Violation of FEHA (Government Code**

**§ 12940(k))—Against Defendants Hilti, Inc., Hilti US**

**Manufacturing, Inc. and Does 1 to**

**100, Inclusive)**

82.   The allegations set forth in paragraphs 1 through 81 are re-alleged and incorporated herein by reference.

83.   At all times herein mentioned, FEHA, Government Code section 12940(k), was in full

force and effect and was binding on defendants.  This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Prior to filing the instant Complaint, plaintiff filed a timely administrative charge with the DFEH and received a right-to-sue notice.

84.  During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff's being treated less favorably because of plaintiff's protected status (*i.e.,* her age, disability, and/or participation in protected activities and/or her good faith complaints and opposition).  During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in unjustified employment practices against employees on the basis of such protected classes.  During the course of plaintiff's employment, defendants failed to prevent a pattern and practice by their employees of intentional discrimination on the basis of engagement in protected activity and protected status.

85.  Plaintiff believes and on that basis alleges that her protected status and/or engagement in a protected activity was a substantial motivating factor in defendants' employees' discrimination and retaliation against her.

86.  As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

87.  As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

88.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

89.  Defendants' misconduct was committed intentionally, in a malicious, fraudulent, oppressive manner, entitling plaintiff to punitive damages against defendants.

## NINTH CAUSE OF ACTION

### (Retaliation for Reporting A Workplace Injury and/or

### Filing Worker's Compensation Claim

### In Violation of Cal. Labor Code §6310(a))

### (Against Hilti, Inc., Hilti US Manufacturing, Inc., and Does 1-100, Inclusive)

90.   The allegations set forth in paragraphs 1 through 89 are re-alleged and incorporated herein by reference.

91.   At all times herein mentioned, California Labor Code § 6310(a) was in full force and effect and binding on Defendants.  This statute requires Defendants to refrain from discharging or in any matter discriminating against an employee for engaging in protected activities including but not limited to: (a) making an oral or written complain to government agencies with reference to her employer, (b) instituting any proceeding under or relating to employees' rights, (c) reporting a work-related fatality, injury, or illness, or (d) requesting access to occupational injury or illness reports and records.

92.   Here, Defendants discriminated and retaliated against plaintiff, in part, because plaintiff suffered an injury at the work place and reported the injur(ies).  Plaintiff also filed a worker's compensation claim against Defendants related to a work place injur(ies).  Thereafter, Defendants wrongfully terminated plaintiff.

93.   As a proximate result of Defendants' willful, knowing and intentional retaliation against plaintiff, plaintiff has lost employment earnings and benefits, past and future, according to proof.

94.   As a proximate result of said wrongful termination, plaintiff has suffered emotional distress, physical and mental injuries and general damages, past and future, in a sum according to proof.

95.   As a proximate result of said wrongful termination, plaintiff has incurred, and will continue to incur, attorney's fees and costs.

96.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, oppressive manner, entitling plaintiff to punitive damages against defendants.

## TENTH CAUSE OF ACTION

## (Wrongful Termination of Employment in Violation of Public

## Policy (Labor Code § 1102.5; FEHA, Government Code § 12900,

## *et seq.*)—Against Defendants Hilti, Inc., Hilti US Manufacturing,

## Inc., and Does 1 to 100, Inclusive)

97.   The allegations set forth in paragraphs 1 through 96 are re-alleged and incorporated herein by reference.

98.   Defendants terminated plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws.  Specifically, plaintiff's employment was terminated in part because of her protected status (*i.e.,* her age, disability, and/or good faith complaints).   These actions were in violation of FEHA, the California Constitution, and California Labor Code section 1102.5.

99.   As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

100.   As a result of defendants' wrongful termination of her employment, plaintiff has suffered general and special damages in sums according to proof.

101.   Defendants' wrongful termination of plaintiff's employment was done intentionally, in a malicious, fraudulent, oppressive manner, entitling plaintiff to punitive damages.

102.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq., plain*tiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

///

///

///

## ELEVENTH CAUSE OF ACTION

### (Violations of Labor Code § 1102.5, *et seq.*—

### Against All Defendants and Does 1 to 100, Inclusive)

103.  The allegations set forth in paragraphs 1 through 102 are re-alleged and incorporated herein by reference.

104.  At all relevant times, Labor Code section 1102.5 was in effect and was binding on defendants.  This statute prohibits defendants from retaliating against any employee, including plaintiff, for raising complaints of illegality.

105.  Plaintiff raised complaints of illegality while she worked for defendants, and defendants retaliated against her by terminating her employment.

a.  Specifically, plaintiff reported the unlawful discrimination and retaliation she was experiencing from defendants on the basis of her age, disability and/or good faith complaints.

b.  Plaintiff also reported what she reasonably believed to be unsafe working conditions in violation of OSHA and/or other state laws,  rules, codes, and/or regulations.

106.  As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

107.  As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

108.  Defendants' misconduct was committed intentionally, in a malicious, fraudulent, oppressive manner, entitling plaintiff to punitive damages against defendants.

## TWELFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress—Against All

### Defendants and Does 1 to 100, Inclusive)

109.  The allegations set forth in paragraphs 1 through 108 are re-alleged and incorporated herein by reference.

110.  Defendants' discriminatory, harassing, and retaliatory actions against plaintiff

constituted severe and outrageous misconduct and caused plaintiff extreme emotional distress.

111.   Defendants were aware that treating plaintiff in the manner alleged above, including depriving her of her livelihood, would devastate plaintiff and cause her extreme hardship.

112.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

113.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

114.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, oppressive manner, entitling plaintiff to punitive damages.


**PRAYER**

WHEREFORE, plaintiff, RENEE MILLER, prays for judgment against defendants as follows:

1.   For general and special damages according to proof;

2.   For exemplary damages, according to proof;

3.   For pre-judgment and post-judgment interest on all damages awarded;

4.   For reasonable attorneys' fees;

5.   For costs of suit incurred;

6.   For injunctive relief;

7.   For such other and further relief as the Court may deem just and proper.

///

///

PLAINTIFF'S COMPLAINT FOR DAMAGES

ADDITIONALLY, plaintiff, RENEE MILLER, demands trial of this matter by jury.  The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated:  October 25, 2021                    **SOUTHERN CALIFORNIA**
                                            **LABOR LAW GROUP, P.C.**

                                     By: _____
                                            Michael Zelman, Esq.
                                            Taylor M. Prainito, Esq.
                                            Attorneys for Plaintiff,

                                            RENEE MILLER

PLAINTIFF'S COMPLAINT FOR DAMAGES